IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| |
|---|
| JESÚS F. MARTÍNEZ-GUADALUPE,<br><br>        Plaintiff<br><br>        v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>        Defendant |

CIVIL NO. 07-1974 (JP)

**OPINION AND ORDER**

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), as amended, to review a final determination of the Commissioner of Social Security ("the Commissioner") denying Plaintiff disability insurance benefits. The Court finds substantial evidence supporting the Commissioner's decision and **AFFIRMS** the same.

**I.   INTRODUCTION**

Plaintiff Jesús Martínez-Guadalupe ("Martínez" or "Plaintiff") filed an application for disability benefits in October 2003, alleging disability beginning in August 2001. On February 27, 2004, Plaintiff Martínez's claim was denied. Martínez filed a request for reconsideration, which also returned an unfavorable decision, and Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"). On August 15 2006, the ALJ denied Plaintiff's

CIVIL NO. 07-1974 (JP)        -2-

application.  The ALJ's decision was affirmed by the Appeals Council on August 17, 2007.

Plaintiff has at least some college education[1] and was sixty years-old at the time of the ALJ's decision (Tr. 45, 86).  Between June 1980 and August 2001, Plaintiff Martínez worked as a supervisor at a government agency, the State Insurance Fund (Tr. 90).  Plaintiff has not worked since 2001, although between 2002 and 2005 he received some wages for liquidated vacation accrued during his previous years of service (Tr. 33-34, 90).  Plaintiff argues that Defendant's determination that Plaintiff is not disabled is not supported by substantial evidence on the record.

## II.  STANDARD OF REVIEW

The Commissioner, not this Court, is charged with the duty of weighing the evidence and resolving material conflicts in the testimony. Richardson v. Perales, 402 U.S. 389, 400 (1971); González García v. Sec'y of Health and Human Servs, 835 F.2d 1, 3 (1st Cir. 1987).  In reviewing the Plaintiff's appeal, the Court does not make a de novo determination.  Lizotte v. Sec'y of Health and Human Servs, 654 F.2d 127, 128 (1st Cir. 1981).  Instead, the Court "must affirm the Commissioner's resolution, even if the record

---

1. Plaintiff's highest level of education is unclear from the record and the parties' briefs.  In Section 7 of the Disability Report-Adult in the record, Plaintiff checked two boxes (Question reads: "check the highest grade of school completed"), which suggests that he completed twelve years of grade school and four or more years of college education (Tr. 86).  However, Defendant's memorandum (No. 8) states that Plaintiff is a high school graduate.

CIVIL NO. 07-1974 (JP)          -3-

arguably could justify a different resolution, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

**III. THE AGENCY'S FINDINGS**

On August 15, 2006, ALJ Solomon Goldman came to the following conclusions (Tr. at 16-21):

1.   Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2007.

2.   Plaintiff has not engaged in substantial gainful activity since August 31, 2001, the alleged onset of disability date.

3.   Plaintiff has the following severe impairments: lumbago and right shoulder bursitis (20 C.F.R. 404.1520(c)).

4.   Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5.   Plaintiff has the residual functional capacity to lift and carry a maximum of fifty pounds and frequently lift/carry twenty-five pounds. Plaintiff can stand, walk, and/or sit for a total of about six hours in an eight hour workday. Occasionally, he can climb and crawl. He has limitations reaching overhead with his right arm. Plaintiff has no visual, communicative, or environmental limitations.

CIVIL NO. 07-1974 (JP)         -4-

6.   Plaintiff is capable of performing past relevant work as a supervisor in a government agency.  This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity (20 C.F.R. 404.1565).

7.   Plaintiff has not been under a "disability" as defined in the Social Security Act, from August 31, 2001 through the date of the ALJ decision, August 15, 2006 (20 C.F.R. 404.1520(f)).

## IV.  ANALYSIS

### A.  Disability Defined (Qualifying Criteria)

Title II of the Social Security Act, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D).  The central question in cases of this sort is whether the claimant is "disabled" within the meaning of 42 U.S.C. § 423(d).  Sherwin v. Comm'r of Health and Human Servs, 685 F.2d 1, 2 (1st Cir. 1982).  That provision defines "disability" as:

> . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . [lasting at least a year and] of such severity that [the claimant] . . . is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether he would be hired if he applied for such work.

42 U.S.C. § 423(d).

CIVIL NO. 07-1974 (JP)          -5-

It is well established that when applying this statutory standard the Plaintiff has the initial burden of showing a disability serious enough to prevent him from working at his former job. If the claimant makes out this prima facie case of disability, the burden then shifts to the Commissioner to show the existence of other jobs in the national economy that the claimant nonetheless can perform. Ortiz v. Sec'y of Health and Human Servs, 890 F.2d 520, 524 (1st Cir. 1989) (per curiam); Torres v. Sec'y of Health and Human Servs, 677 F.2d 167, 168 (1st Cir. 1982).

The Commissioner has established a five-step process for determining whether an individual is disabled. See 20 C.F.R. § 404.1520. The first three steps are threshold determinations. These steps are taken to determine: (1) whether a claimant is working in a substantially gainful activity ("SGA"); (2) whether the claimant has an impairment; and (3) whether the impairment is found explicitly or is equal to one found in Appendix 1 of the regulations governing disability. If the claimant is working or does not have an impairment, then the claim will be denied.

If the claimant is unemployed and has an impairment, then the decision maker proceeds to step four, and determines whether the claimant is able to perform work in his or her relevant, past occupational field. If this is not the case, the ALJ must then determine at step five whether the claimant can perform a

CIVIL NO. 07-1974 (JP)         -6-

substantially gainful activity in the country's economy. See 20 C.F.R. § 404.1520; <u>Forney v. Apfel</u>, 524 U.S. 266, 268 (1998); <u>Goodermote v. Sec'y of Health and Human Servs</u>, 690 F.2d 5, 7 (1st Cir. 1982).

### B. **Plaintiff's Arguments Regarding the ALJ's Decision**

In his decision to deny Plaintiff's application, the ALJ analyzed the first four steps and held that: (1) Plaintiff had not been employed since the alleged onset date of his claimed impairment; (2) Plaintiff had severe impairments, including lumbago and right shoulder bursitis; (3) his impairment or combination of impairments did not meet or equal one of the listed impairments in the guidelines; and (4) Plaintiff was able to perform his past relevant work as a supervisor in a government agency.

Plaintiff mainly takes issue with the conclusion reached on the fourth factor. In general, Plaintiff claims that the ALJ's conclusion about Plaintiff not being disabled was unsupported by substantial medical or vocational evidence in the record. More specifically, Plaintiff contends that the ALJ erred in making determinations regarding Plaintiff's residual functional capacity ("RFC") and ability to engage in SGA, and failed to address Plaintiff's complaints and symptomatology.

Plaintiff claims that the record lacks "an adequate RFC assessment by a treating or examining source [that would] support the

CIVIL NO. 07-1974 (JP)            -7-

ALJ's lay opinion or . . . cover the whole of the medical evidence" and contends that the ALJ erroneously substituted his own judgment for that of the medical experts in making a determination about Plaintiff's RFC. Specifically, Plaintiff alleges that the ALJ, when reaching his conclusions about Plaintiff's RFC, failed to explain his decision making process or determine if exertional or nonexertional impairments existed. Plaintiff further posits that since the ALJ did not question a vocational expert, that he made a medical determination about Plaintiff's disability that was in conflict with that of the consultants and the treating sources.

### C.   Court's Analysis

The Court agrees with the ALJ's assessment, as there is ample evidence in the record to support his decision to deny benefits to Plaintiff.

#### 1.   *Working in Substantially Gainful Activity*

The ALJ found that Plaintiff had satisfied the first element because had not engaged in substantial gainful activity since the alleged onset of his disability on August 31, 2001 (Tr. 18). This element is therefore not in dispute, and the finding is supported by Plaintiff's Disability Report-Adult in the record (Tr. 80).

#### 2.   *Existence of Severe Impairment*

As to step two, the ALJ found that the medical evidence revealed that Plaintiff suffered from the following severe impairments

CIVIL NO. 07-1974 (JP)          -8-

(conditions that have more than a minimal effect on the claimant's ability to perform basic work-related activities): lumbago and right shoulder bursitis (Tr. 18).

In May 2004, Dr. Zaida Boria, a neurologist with whom Plaintiff consulted, noted that Plaintiff was alert, coherent, relevant, cooperative, clean, well oriented in time, place, and person, and had good recent and past memory (Tr. 208). Dr. Boria found also that Plaintiff had no restrictions on his range of motion, normal muscle tone, no tenderness, and no atrophy of hands or extremities. Dr. Boria assessed that Plaintiff suffered from right shoulder and lumbar pain without restrictions and that Plaintiff was able to sit, stand, walk, and travel, and handle and lift common objects. (Tr. 210).

Conversely, there is a report from Dr. Bonneaux, from November 2003, that states that "the activities of lifting, carrying, handling, pulling, and pushing objects all are affected," however, there is no assessment of how those activities were affected (Tr. 139). Dr. Figueroa, another one of Plaintiff's treating physicians, noted that Plaintiff suffered from a decreased range of motion in his right shoulder and suggested that Plaintiff may have suffered from a traumatic injury to rotator cuff (Tr. 333). In May 2003, Dr. Figueroa ordered a right shoulder MRI, which revealed that Plaintiff may have been suffering from tendinosis or tendinitis

CIVIL NO. 07-1974 (JP)            -9-

in his right shoulder, but no definite rotator cuff tear was noted (Tr. 162, 333). In subsequent reports by Dr. Figueroa, it was only noted that Plaintiff suffered from decreased range of motion and arthralgias (joint pain) in his right shoulder. (Tr. 147-50, 205-6). Based on the evidence of Dr. Boria, Dr. Bonneaux, and Dr. Figueroa, the ALJ found that Plaintiff suffers from lumbago and right shoulder bursitis, thus satisfying the step two requirement of having an impairment.

Although Plaintiff also alleged a disability due to high blood pressure, the ALJ found that Plaintiff's "high blood pressure [was] not a severe, medically determined impairment which limit[ed] the claimant's residual functional capacity" (Tr. 18). The diagnostic studies that were performed by treating physician Dr. Figueroa showed that Plaintiff suffered from hypertension, but tested negative for chest pain, palpitations, tachycardia (rapid heart rate), orthopnea (breathing difficulties), and edema. (See e.g. Tr. 146-50, 158-59, 342-43). In addition, although Plaintiff was prescribed medication to control his hypertension, no limitations related to high blood pressure were reported by the treating or consulting sources (Tr. 18, 342-43).

We turn now to Plaintiff's alleged emotional disability. Plaintiff's treating psychiatrist, who treated Plaintiff since October 14, 2003, determined that Plaintiff had a global assessment

CIVIL NO. 07-1974 (JP)          -10-

of functioning ("GAF") at 72, which indicates no more than a slight impairment in occupational functioning.  (Tr.19, 362). In addition, Plaintiff's treating physician, Dr. Figueroa, did not note any psychiatric complaints or symptoms (See, e.g., Tr. 337).  As a result, the ALJ did not consider the claimant's psychiatric impairment as "severe" because "the condition had only imposed mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and concentration, and no episode of decompensation." (Tr. 19).  Hence, the ALJ found that Plaintiff did not suffer from a severe mental impairment.

Based on the Court's review of the record, The Court finds that there is substantial evidence in the support the ALJ's finding that Plaintiff did suffer from severe impairments, but that said impairments are limited to lumbago and right shoulder bursitis.

### 3.   *Whether Impairments Rise to Level of Disability*

As to step three, there is substantial evidence to support the ALJ's conclusion that the record failed to establish that Plaintiff is subject to an impairment or combination of impairments which meets or equals the regulatory requirements.  The ALJ explains that in deciding this factor he considered the opinions of the "State Agency medical and other consultants who evaluated Plaintiff at the initial and reconsideration stages" (Tr. 19). The ALJ's opinion further explains that although there is evidence in the record that indicates

CIVIL NO. 07-1974 (JP)            -11-

that Plaintiff suffers from degenerative and discogenic disease of the cervico-lumbar spine, the data from clinical findings and diagnostic tests did not rise to the requisite level of severity for neurological deficits. (Tr. 19, 211). Hence, the ALJ's determination is not simply his own lay assessment, but rather a conclusion that was informed by State Agency medical and other consultants who evaluated the claimant.

The ALJ is not required by law to give greater weight to the opinions of treating physicians. <u>Arroyo v. Secretary of Health and Human Services</u>, 932 F.2d 82 (1st Cir. 1991) (citing <u>Tremblay v. Secretary of Health and Human Services</u>, 676 F.2d 11, 13 (1st Cir. 1982)).  Hence, the Plaintiff's argument that the ALJ should have obtained more treating source opinions is without merit. The Court therefore finds that the ALJ's determination as to the existence and severity of Plaintiff's impairments is supported by substantial evidence in the record.

### *4.   Ability to Perform Past Relevant Work*

In his past relevant employment as a government supervisor, Plaintiff was required to lift/carry fifty pounds, sit for about four hours, walk for about one hour, and stand for about two hours.[2]  He

---

2.   There is some inconsistency between Plaintiff's reports about the nature of his job. In the Disability Report-Adult in September 2003, Plaintiff described his job as a Supervisor in a Government Agency as having to lift less than ten pounds, but in a subsequent report, he stated that he had to lift frequently fifty pounds in the same role, while supervising sixteen to seventeen employees for the majority of his workday (Tr. 81, 103). Plaintiff's former description is more consistent with the general description in the Dictionary of

CIVIL NO. 07-1974 (JP)          -12-

had to use machines and other equipment, apply technical knowledge and skills, and prepare checks, budgets, and reports. (Tr.21). The ALJ found that Plaintiff retained a residual functional capacity that was fully compatible with the physical and mental demands of his past relevant work as it was actually and generally performed. (Tr. 21).

In making a determination on the fourth factor, the ALJ considered all symptoms along with objective medical evidence and other evidence, including opinion evidence in accordance with regulatory requirements (Tr. 19; 20 C.F.R. 404.1529; SSR 96-4p,7p). The ALJ, after reviewing the entire record, found that Plaintiff had the RFC to lift and carry a maximum of fifty pounds and frequently lift and carry twenty-five pounds. It was determined that Plaintiff could stand, walk, and/or sit for a total of about six hours in an eight-hour workday. He could occasionally climb and crawl. Plaintiff had no visual, communicative, or environmental limitations, but had limitations reaching overhead with his right arm. (Tr. 19, 217-34). Plaintiff's sensory-motor functioning, reflexes, gait, and coordination were all intact. (Tr. 209). Plaintiff was able to walk on his heels or toes without problems and his muscle strength was 5/5, bilaterally (Tr. 20). The ALJ's findings as to Plaintiff's physical capacities tracks with the RFC assessments in

---

Occupational Titles, which describes the job that Plaintiff performed as light work in the national economy. (Tr. 103, 105).

CIVIL NO. 07-1974 (JP)          -13-

the record that were submitted by two reviewing physicians. (Tr. 19, 217-234).

In determining Plaintiff's RFC, the ALJ gave "controlling weight to the consultants at the State Agency who reviewed the documentary evidence at the initial and reconsideration levels and opined that [Plaintiff] could perform work at the medium level of exertion." (Tr. 20, 217-34).

Under 20 C.F.R. § 404.1527 (f), the expert opinions of medical reviewers may amount to substantial evidence where they represent a reasonable reading of the entirety of the relevant medical evidence. While both treating and reviewing physicians noted some shoulder pain and exertional limitation (e.g. range of motion, reaching upward), the treating physicians are largely silent on the extent of the limitation in their numerous reports, nor do they suggest that Plaintiff is incapable of doing his past relevant work. (Tr. 136, 164-65, 210). Plaintiff's specific exertional limitations are most explicitly captured in the RFC assessments that were submitted by reviewing physicians. These RFC assessments are largely consistent with the reports of the treating physicians and support the ALJ's finding that Plaintiff can perform past relevant work. (Tr. 217-234).

With regard to Plaintiff's own description of his symptoms and ability to perform past relevant work, the ALJ determined:

> After considering the evidence of record, the undersigned finds that [Plaintiff's] medically determinable

CIVIL NO. 07-1974 (JP)          -14-

> impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.

(Tr. 20). The ALJ was not required to take Plaintiff's description of his RFC at face value. <u>Burgos López v. Secretary of Health and Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984). While Plaintiff's pain was to be considered by the ALJ, it is the ALJ's, not the reviewing court's, responsibility to resolve issues of credibility, draw inferences from the record, and resolve conflicts in the evidence. <u>Irlanda Ortiz v. Secretary of Health and Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991). The alleged symptoms must be consistent with the objective medical evidence and other evidence in the record and the effects of the symptoms must be taken into account when the capacity to perform work is assessed. <u>Avery v. Secretary of Health and Human Services</u>, 797 F.2d 19, 22-23 (1st Cir. 1986). Accordingly, the ALJ found "that the evidence of record does not reveal such significant medical abnormalities or corroborative medical findings that could justify the allegations of continuous disabling physical distress" (Tr. 20). In addition, there was no indication that Plaintiff sought out treatment for "an intractable painful condition or specifically followed a continuous medical treatment for the control of his physical distress." (Tr. 20).

Plaintiff, citing <u>Rivera Torres v. Secretary</u>, 837 F.2d 4, 6 (1st Cir. 1988), argues that the ALJ erred when he failed to require

CIVIL NO. 07-1974 (JP)         -15-

an examining consultant to complete an RFC assessment.  While the court in Rivera Torres suggested that an RFC assessment from an examining source was optimal, it also alluded to the fact that a nonexamining physician could provide a useful RFC assessment. See Id.; see also Rivera-Figueroa v. Secretary of Health and Human Services, 858 F.2d 48, 52 (1st Cir. 1988). In Rivera Torres, the ALJ arrived at his conclusions as to step four  without the benefit of any RFC evaluation, while, in the instant case, there are two RFC assessments by nonexamining physicians.   Id. (Tr. 217-34). Regulation 20 C.F.R. § 404.1513(b) and (c) states that "medical reports should include a medical assessment indicating ability to do work related activities," however, the use of such regulatory language ("should") does not unequivocally require an RFC report from a treating or consulting physician.  In short, the ALJ's finding on the fourth element, and the resulting decision to deny benefits to Plaintiff, was supported by substantial medical and vocational evidence and fell soundly within the sphere of discretion that is afforded to the ALJ.

### *5. Ability to Perform Other Substantially Gainful Activity in the Nation's Economy*

In light of the ALJ's finding that Plaintiff could perform past, relevant work (Step Four), the ALJ did not reach and the Court need not address Step Five of the analysis.

CIVIL NO. 07-1974 (JP)        -16-

### *6. Plaintiff's Additional Arguments*

Plaintiff has two other arguments that can be disposed of fairly easily. First, Plaintiff alleges that the ALJ did not take into account vocational factors, such as age, education, work experience, and residual work capacity. The ALJ is not required to explicitly weigh these factors until Step Five. See Sherwin v. Secretary of Health and Human Services, 685 F.2d 1, 2 (1st Cir. 1982) (discussing the use of the "medical-vocational grid" in Step Five that considers age, education, work experience, and residual work capacity). Furthermore, Step Four incorporates both vocational (Plaintiff's description of past relevant work) and medical (RFC) components into its test.

Second, Plaintiff claims that the ALJ should have enlisted the assistance of a vocational expert in arriving at his conclusions about Plaintiff's RFC, but Plaintiff has not cited any authority in his brief for why a vocational expert should have been consulted in this particular situation. The ALJ's determination as to Plaintiff's RFC solidly rests upon the medical evidence discussed above. (Tr. 96, 103, 105, 117-22, 139, 162, 207-34, 342-43). Case law in the First Circuit suggests that vocational experts are far more likely to be consulted when a claimant's evaluation has progressed to Step Five, where the burden of proof has shifted to the ALJ to determine whether a claimant is able to perform other work in the

CIVIL NO. 07-1974 (JP)            -17-

national economy.  See e.g. Arroyo v. Secretary of Health and Human Services, 932 F.2d 82, 89 (1st Cir. 1991); González v. Secretary of Health and Human Services, 757 F.Supp. 130, 133 (1st Cir. 1991). Hence, this Court finds no reason why the ALJ should have requested the assistance of a vocational expert.

The findings of the Commissioner are conclusive if supported by substantial evidence and should be upheld even in those cases in which the reviewing court, had it heard the same evidence de novo, might have found otherwise.  Lizotte v. Sec'y of Health and Human Ser'v, 654 F.2d 136, 141-142 (1st Cir. 1987).  In light of the evidence in the medical record which supports the ALJ and Commissioner's determinations, the Court **AFFIRMS** the Commissioner's decision.  Judgment will be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of September, 2009.

                                               s/Jaime Pieras, Jr.
                                                JAIME PIERAS, JR.
                                          U.S. SENIOR DISTRICT JUDGE